## McGowan, et al. v. Wells' Trustee.

(Decided June 17, 1919.)

## Appeal from Nelson Circuit Court.

1. Guaranty—Construction and Operation.—The construction to be placed upon a contract of guaranty, is governed by the intention of the parties, to be gathered from the language used in the writing, and the attendant circumstances, as in case of any other contract.

2. Guaranty—Notice of Acceptance—Intention.—A writing, the legal effect of which is a proposal to guarantee the payment or collection of an obligation, will not be binding upon the guarantors, unless the proposal is accepted, and notice given to the guarantors, of the acceptance and intention to act upon it, otherwise, there has been no contract made. Where the guarantors have knowledge of the acceptance of the guaranty, no formal notice of the fact need to be given, and the guarantors may waive the giving of notice, if they so contract.

3. Guaranty—Notice of Acceptance.—Notice of acceptance of a guaranty, need not be given, where the guaranty is to pay a pre-existing debt, or to pay a debt, created simultaneously with the giving of the guaranty; or where a guaranty is given to pay a debt, at the request of the creditor; or where the creditor pays a consideration to the guarantors for their obligation; or where the guaranty is an absolute promise, in the nature of a prime liability, to pay a future debt. In the instances, the guarantors are considered to have notice of the acceptance or have waived the giving of notice.

4. Guaranty—Notice of Acceptance.—If a guaranty is of the solvency of a debtor, or for the collection of a debt, the guarantors will not be bound, unless notice is given within a reasonable time of the amount of the credit extended; and unless reasonable diligence is then exercised in demanding and collecting the debt, and notifying the guarantors of the default of the principal debtor, they will be discharged from the guaranty, to the extent, that they suffer damages from the laches of the creditor.

5. Guaranty—Notice of Acceptance.—If the guaranty is an absolute one, in the nature of the liability of a surety, for the payment of future credits to a third person, the creditor need not give notice, to the guarantors, of the amounts of the credits advanced nor of the default of the principal debtor, nor need he make any efforts to collect the debts, as the liability has been fixed, when the credits were advanced, and their liability will not be increased nor diminished by the failure to give them notice.

6. Guaranty—Promissory Note—Assignment.—A guaranty to pay a promissory note, when assigned, will pass to the assignee, with

the same rights, that the assignor had for the enforcement of liability against the guarantors.

AUGUSTUS E. WILLSON, R. P. DIETZMAN and R. C. CHERRY for appellants.

KELLEY & KELLEY and JOHN A. FULTON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action was instituted in the Nelson circuit court, by John E. Newman, trustee of Alvin W. Wells, an infant, against the Distillers Cooperage Company, Graeme McGowan, Thos. S. Moore, L. B. Samuels, and Augustus E. Willson, as committee for James L. Hackett, to recover a judgment against the defendants, upon two promissory notes, which had been executed to the People's Bank, by the Distillers Cooperage Company and transferred to the plaintiff, by the bank, and the recovery was sought against the defendants, other than the obligor upon the notes, upon the ground, that they were guarantors of the payment of the notes. The petition, after averring the facts, necessary to authorize the plaintiff to sue in the capacity of trustee, averred, that, on September 11, 1912, the Distillers Cooperage Company executed and delivered the notes sued on, one of which was for the sum of $4,000.00 and the other for $1,000.00, to the People's Bank, in consideration of the bank having furnished to the cooperage company, the above sums upon that date, and that the Distillers Cooperage Company, by the notes, promised to pay to the bank, the sums named to the order of the obligee upon demand, with their interest, and thereafter, about September 20, 1912, the bank, by endorsement upon the back of each of the notes, transferred and assigned the notes, without recourse upon it, to the plaintiff, and that he was the holder and owner of the notes, and that prior to the bringing of the suit, in the latter part of the year, 1914, the plaintiff made demand of the Distillers Cooperage Company, for the payment of the notes, and thereafter, in September, 1917, made demand of the other defendants, to pay the notes, but, that the defendants had failed to pay any part of the notes, except the interest had been paid in regular annual install- ments, until September 12, 1916. It was, also, averred, that the defendants, McGowan, Moore, Samuels, James

L. Hackett, and one R. H. Edelen, on the 7th day of March, 1912, and before the bank loaned the sums, for which the notes were executed, had executed and delivered to the bank, a contract in writing, by which they became guarantors of the payment of the notes. To the petition, the defendants, except the Distiller's Cooperage Company, demurred generally, and, also, specially, upon the ground, that the petition showed, that there was a defect of parties. The demurrers were overruled. The defendants, other than the Distillers Cooperage Company, then filed answers and amended answers, to which the plaintiff demurred generally, The court sustained the demurrer, and the defendants declining to further plead, a judgment was rendered, against them, for the amount of the notes, with the accrued interest. The answering defendants have appealed from the judgment.

The defendants, below, appellants, here, insist, that the petition was insufficient in law, in that it was not alleged therein, that the loans were made to the Distillers Cooperage Company, in reliance upon the guaranty of appellants, and that the demurrer to the answer, was erroneously overruled, when it presented a sufficient defense, to the action. Only such alleged errors, as are complained of will be considered. The appellants, in their answers, averred the following facts, as constituting a defense to the action, and being considered insufficient by the trial court, they now insist, that the court was in error, and the judgment should be reversed:

(1) The execution and delivery of the guaranty, was without consideration, and therefore not enforcible.

(2) After the execution and delivery of the guaranty to the bank, the latter never gave the guarantors any notice of the acceptance of the guaranty, or its purpose to act thereon.

(3) After the bank furnished to the Distillers Cooperage Company, the money, for which the notes, sued on, were executed on September 11, 1912, it did not give to the guarantors any notice of the loan or of its amount.

(4) The plaintiff, below, appellee, here, after the assignment of the notes to him, on September 20, 1912, did not demand payment of the notes by the Distillers Cooperage Company, until the latter part of the year, 1914, and never gave the guarantors notice of the default

in payment of the notes by the company, and never demanded payment of the guarantors, until in September, 1917, and they were therefore, discharged from any obligation to pay the notes, because of the laches of the plaintiff, or at least, to the extent, that they suffered loss, on account of such laches.

(5) The guaranty was a special one, and non-assignable, and the bank did not, in fact, assign the guaranty to the plaintiff, when the notes were assigned to him, and therefore, the plaintiff had no cause of action against the defendants, as he had accepted an assignment of the notes without recourse upon the bank, for whose protection alone the guaranty was executed.

(a) The objection to the petition, as prefererd by appellants, will be first considered. The petition does not, in words, allege, that the bank loaned the money for which the notes were given and took the notes of the Distillers Cooperage Company, therefor, relying upon, and because of the guaranty for their payment, but, the words of the guaranty, which is made a part of the petition, shows, that it was necessary for the cooperage company, in order to procure the bank to loan it money, and to pay bills for it, that the guaranty should be executed and delivered to the bank as a security for such sums as the bank should furnish it, and that it was intended for that purpose and to perform that office. The petition, also, does in substance, allege, that the moneys loaned to the cooperage company upon the notes, was of the sums, which appellants intended to guarantee the payment of, by the execution and delivery of the guaranty, and, hence, is a substantial statement of the liability of the guarantors by reason of the contract, and that, relying upon same, the moneys were loaned.

(b) It is not claimed, that the overruling of the special demurrer was error, nor is the defect of parties complained of pointed out, in any way, but, we assume, that the demurrer was based upon the idea, that as the guaranty was subscribed by Edelen, it was necessary to make him a party to a suit upon it, but, as the obligation was a several as well as a joint one, a suit may be maintained against any or all of them, at the election of the plaintiff.

(c) The soundness of the other contentions, except the last, depends upon the obligations assumed by, and

are imposed upon the parties by the terms and conditions of the contract of guaranty, between the parties, and hence, these contentions will be considered together.

The contract, as admitted by the answer, was set out in full, in the petition, and is as follows:

"Whereas, the Distillers Cooperage Company of Bardstown, Nelson county, Kentucky, a corporation duly created under and by virtue of the laws of the Commonwealth of Kentucky, keeps its accounts and deposits with the People's Bank of Bardstown, Nelson county, and state of Kentucky, and in the conduct and operation of its business and affairs, it is necessary for said Distillers Cooperage Company to obtain loans and to create debts and obligations and to execute notes therefor, and to secure the payment of same; now, therefore, we, the undersigned stockholders and officers of said Distillers Cooperage Company, do hereby agree, covenant and bind ourselves with and to the said People's Bank, that we will be responsible for and guarantee the payment of all sums of money advanced to, or paid for the said Distillers Cooperage Company by said People's Bank, and will guarantee and pay to said bank, all notes, bills or other demands executed to the said People's Bank, by or in the name of said Distillers Cooperage Company, by L. B. Samuels, treasurer of said Distillers Cooperage Company, as fully and to have the same effect, as if we were personally present and signed each and every note, bill or demand of said Distillers Cooperage Company to said People's Bank. This agreement and guarantee on our part to continue and to apply to all indebtedness, that may be incurred by said Distillers Cooperage Company, and to all notes, demands or bills, that may be executed or made by said Distillers Cooperage Company to said People's Bank from time to time, in the future, until the respective signers hereto shall have given notice, in writing, to said People's Bank, that they withdraw therefrom, or will not be bound upon any debts or obligations thereafter created or note or bill or other demands made or executed to said People's Bank.

"It is further agreed, that while each and every person signing this, is bound to said bank for the whole amount of each and every debt and obligation, note,

bill or other demand, incurred or executed to said bank through L. B. Samuels, treas., the signers, hereto, as between themselves, are liable only in proportion to the amount of stock held by them respectively in the said Distillers Cooperage Company, the liability of James L. Hackett and Graeme McGowan being in proportion to the stock held by Greenbrier Distillery Company, of which they are the owners.

"Witness our hands, this March 7, 1912.

GRAEME McGOWAN,
R. H. EDELEN,
THOS. S. MOORE,
L. B. SAMUELS,
JAMES L. HACKETT."

The rights and obligations of the parties under a contract of guaranty, like any other contract, which persons may enter into, depend upon what they contract to do. In the absence of a statute, prescribing the duties of creditors and the rights of guarantors, certain rules, which as general rules, apply to their duties, and rights can not be applied to every contract of guaranty, regardless of what the parties, have agreed to, and have contracted with each other to do. A guarantor, it must be borne in mind, does not occupy the position of an endorser, unless he has contracted to occupy such position. An endorser does not warrant nor guarantee the solvency of the principal debtor, neither does he undertake to pay the debt, only in the event, the debtor does not pay it, and then only, if the holder complies with the law as to demand of the maker of the debt and notice of default in the payment; while upon the other hand, a guarantor may guarantee the payment of a debt or the solvency of the principal debtor, or that the debt may be collected if diligent efforts are made, and he may be bound for the payment of a debt, without demand made of the principal debtor, or notice of default, as the legal effect of his contract may require. The obligation of a guarantor may be the same as those of a surety, if the contract is such as to require it, and oftentimes, the liability of a guarantor and surety may be so nearly alike, that a distinction between them is clouded, and almost impossible of distinction. Considering the writing, which embraces the contract sued upon, in the instant case, it, at once, appears, that the consideration

for its execution is future advances to be made by the bank to the Distillers Cooperage Company, which is without doubt, a sufficient consideration to support it. The guaranty is absolute, because it is an absolute and unqualified promise to pay the debts contracted by the Distillers Cooperage Company to the bank, when the obligations are signed by Distillers Cooperage Company, by L. B. Samuels, its treasurer. The guaranty is unlimited in amount and is unlimited as to the time, in which it is to be in force, as the parties expressly agree, that the guaranty is to continue until the guarantors give the bank notice, in writing, that it has terminated, as to any further obligations. That there should be no misunderstanding as to the liabilities of the guarantors, and what positions, they should occupy, to the creditor, it is expressly agreed, that when the bank shall have loaned money to the cooperage company, or paid moneys for it, and the obligation shall be executed as provided in the writing, the guarantors will be bound, not to pay it, if it can not be collected from the principal obligor, but "as fully and to have the same effect, as if we were personally present and signed each and every note, bill or demand of said Distillers Cooperage Company to said People's Bank." This created, for the guarantors, the liabilities of sureties, unmistakably, and was a covenant with the bank, that when a note, bill or demand was executed, to it, by the Distillers Cooperage Company, that the bank should accept the obligation with the understanding, that the condition was the same, as if the guarantors were present and personally subscribed the obligation.

(d)    Whether as a condition precedent to the guaranty becoming a binding obligation upon the guarantors, without notice from the bank, that it had accepted it and proposed to act upon it, is determined by a decision of the question, as to whether the guaranty, contained in the contract, is an absolute or a conditional one. Before a guarantor is bound, of course, there must be a contract, between him and the creditor, a meeting of the minds of the two, in agreement. If the writing, containing the guaranty relied upon, is a mere proposal to become liable for the debt of another to be made in the future, if there is any condition, which requires action by the creditor before the obligation is fixed, it is con-

sidered a conditional guaranty, and the guarantor is not bound, unless he has notice or knowledge, that the creditor has accepted his offer or performed the condition, and that he intends to act upon the guaranty. Without such notice, in such state of case, there would be no meeting of the minds in agreement and hence, no contract.

Kincheloe v. Holmes, 7 B. M. 5; Steadman v. Guthrie, 4 Met. 157; Estey v. Murphy, 7 K. L. R. 596; Bell & Terry v. Kellar, 13 B. M. 381; Lowe & Co. v. Beckwith, 14 B. M. 184; Hughes v. Roberts, 24 R. 2004; Greer Machinery Co. v. Sears, 119 Ky. 697; Gano v. Farmer's Bank, 103 Ky. 510; Goff v. Janeway, 26 R. 527; Mast, et al. v. Lehman, 100 Ky. 465; Baker v. Farmer's, 90 Ky. 422; Davis v. Wells, Fargo & Co., 104 U. S. 159. Notice by the creditor of the acceptance of a guaranty may, however, be expressly waived by the guarantors, or the waiver may be implied by the terms of the writing containing the contract. Hibernia Bank & T. Co. v. Concienne, 1917, D. L. R. A. 407; Louisiana & W. R. Co. v. Dillard, 51 La. 825; Heitman Co. v. Kansas City Southern R. Co., 136 La. 125. The intention of the parties to the contract of guaranty as gathered from the language, read in the light of attendant circumstances, must govern the construction of the contract, as it does every other kind of contract. It can be gathered from the contract, in the instant case, that the guarantors intended to be primarily bound for the debts, and as the necessities of the business of the cooperage company would demand financial aid from time to time, in amounts not then known, and when it would be difficult or impossible to secure the presence of the guarantors, or all of them, the contract was reduced to writing and delivered to the bank, for the purpose of avoiding the difficulties mentioned, and as there should be no suspension of the guaranty, it was to apply to all loans made by the bank to the cooperage company, until the bank was notified in writing, that the guaranty was withdrawn. Under these circumstances and the conditions, it is clear, that the guarantors intended to be bound, without any notice of acceptance of the guaranty by the bank, as the guaranty was to bind them, until they gave the bank notice, in writing, of their intention to withdraw the guaranty. Further, when a guaranty is

executed and delivered simultaneously with the creation of the debt; or where a guaranty is given to secure a pre-existing debt; or where a consideration is paid to the guarantor by the guarantee, for his obligation, or where a creditor requires the execution of a guaranty, notice of the acceptance of the guaranty by the creditor is not necessary to make the guaranty binding and enforcible. This principle is held upon the ground, that the guarantor has knowledge of the acceptance of the guaranty, or else, has waived it. The same rule prevails, where the guaranty is absolute and unconditional, and the obligation amounts to a primary obligation to pay the debt. In such a state of case it is considered, that the notice of the acceptance of the guaranty has been waived by the guarantor, as his obligation to pay the debt does not depend upon the solvency of the principal debtor, and his obligation becomes no greater because of the default of the principal debtor, or the failure of the creditor to use diligence in making the collection. The guaranty is accepted when acted upon. White Sewing Machine Co. v. Powell, 25 K. L. R. 94; Monarch v. First National Bank, 105 Ky. 336; Long v. Hemphill, etc., 25 K. L. R. 770; J. R. Watkins Medical Co. v. Brand, 143 Ky. 468, 14 A. & E. Enc. of Law (2 ed.) 1141; Davis v. Wells, Fargo & Co., 104 U. S. 159; Hibernia Bank & T. Co. v. Concienne, 140 La. 969; Pulaski Stave Co. v. Miller's Creek Lumber Co., 138 Ky. 372. In 14 A. & E. Enc. of Law 1141, *supra,* the doctrine is thus stated: "An absolute guaranty is an unconditional promise of payment or performance on default of the principal. To bind the guarantor, it is not necessary, that there should be notice of acceptance of the guaranty or notice of the default of the principal, or that any step should be taken to enforce the contract guaranteed against the principal."

(e) Whether a guarantor has the right to demand notice of the creditor, when the guaranty of future credits is acted upon and money furnished to the principal debtor, seems to turn upon whether the guaranty is one of payment or of collection. If the guaranty is an absolute one of payment, the obligation of the guarantor becomes fixed as quickly as the guaranty is acted upon and the credit extended, and hence, his obligation is not increased or diminished by a failure to give the guarantor

notice of the amount of the credit extended. If the guaranty is, that the principal debtor is solvent, and the debt can be collected from him by proper diligence in making demand and giving notice of default, the guarantor's liability to pay the debt, does not arise until the debtor has become insolvent, or the creditor, by reasonable diligence, fails to obtain a collection of the debt. In such a state of case, the guarantor is entitled to have reasonable notice of the advancements of credit, and reasonable diligence on the part of the guaranteed, in securing a collection of the debt, as the guarantor's liability depends upon such acts, because when a guaranty of collection is made, the contract implies, that the creditor will use reasonable diligence in collecting his debt, and will give notice to the guarantors of the extent of the credits given and of a default of the principal debtor, but, if the guaranty is absolute and not of a collection, but of payment, it is a contract of his own making and as his liabilty becomes absolute to pay the debt, when the credit is advanced to the principal debtor, the guarantor, as a condition precedent to liability, can not require notice of the advancements of credit, nor of default on the part of the principal debtor, nor any diligence in the collection of the demand, as he can be required to pay the debt, at any time, after its maturity, without reference to the principal debtor. and such a guarantor is bound to take notice of the existence of the debt, and its non-payment, as a surety must do. 20 Cyc. 1458; Levi v. Mendell, 1 Duv. 78; Allen's Sons v. Dillingham, 104 Ky. 807; Lowe & Co. v. Beckwith, 14 B. M. 150, 14 A. & E. Enc. of Law (2 ed.) 1141; Davis v. Wells, Fargo & Co., *supra;* Pulaski Stave Co. v. Miller's Creek L. Co., 138 Ky. 372. In the instant case, as heretofore shown, the guaranty was an absolute promise of payment, if the principal debtor did not pay, and the obligation of the guarantors became absolute, and in the nature of sureties, as soon as the credit was extended to the Distillers Cooperage Company, and was thereafter bound as the surety would be for the payment of the notes, as the guarantors expressly contracted for a primary liability. Monarch Co. v. First National Bank, *supra.*

(f) In the contract, the guarantors describe themselves as being, both stockholders and officers of the Distillers Cooperage Company, and the officers, of such a

corporation, are presumed to know actually of the extent of its indebtedness, and notice is never required to be given to one of a matter, about which he already has actual knowledge. The knowledge of the guarantors of the incurrence of the debts by the cooperage company, which they must have had as officers of the corporation, would dispense with notice from the bank of the incurrence of the debts by the cooperage company, and its default in the payment. Hibernia Bank & T. Co. v. Concienne, *supra.*

(g)   The guaranty was a special one to the bank, and it is clear, that no other person could have extended credit, in reliance upon it, but, no one else did so. The notes were negotiable and were assigned to plaintiff without recourse. The assignment, without recourse, had the effect, only, of preventing the bank from being bound as an endorser, and it could not affect the passing of securities as incidents to the notes. The rule, that a special guaranty, is not assignable, and which is adhered to in some jurisdictions, is based upon the ground, that a special guaranty is given, because of a personal confidence in the guaranteed, and a general guaranty is held to be assignable, because its execution could not arise from any personal confidence. The reason for this rule, however, fails, when the debtor, with the knowledge of the guarantors, executes to the guaranteed, negotiable obligations, the very name of which implies, that they are likely to be at any time, transferred, and the guarantors could not contemplate, that a bank should be obliged, if it negotiated the notes held by it, to strip them of their security. The guaranty, in the instant case, contained no condition, which rendered it non-assignable. It appears to have been a purely business transaction, devoid of any elements of personal confidence, and was given purely to obtain moneys for the cooperage company, in which the guarantors were officers and stockholders. The guaranty was given to secure the payments of the notes, was an incident to, and collateral to them. The right to rely upon the guaranty, was an incident to the notes. The assignment was unqualified to the extent of entitling the assignee to all rights incident to them. The general rule applicable to assignments of choses in action, is, that the assignment, unless there is a contract to the contrary, carries with it ''all   securities held by the assignor, collateral to the claim and all rights incidental thereto, and

vests in the assignee, the equitable title to such collateral securities and incidental rights," 4 Cyc. 69, 70, 71. Under section 474, Ky. Stats., all bonds, bills and notes are assignable. In Rogers v. Harvey, et al., 143 Ky. 88, this court held, that a special guaranty given to guartee a purchaser of stock in a corporation against loss, in the purchase of the stock, passed with a sale of the stock, and the purchaser, at the sale, was authorized to sue upon the guaranty and this seems to be in accordance with the trend of modern judicial thought, as the rule has always been, that an assignment of a debt carries with it all the liens and securities collateral and incident to it. Summers v. Kelgus, 14 Bush, 449; Johnson v. Gwatheney, 4 Litt. 317; Cin. Tob. W. Co. v. Leslie & Whittaker's Trustee, 117 Ky. 484; Rogers v. Harvey, *supra.* Under this rule, it was immaterial, that the guaranty was not assigned, at the same time, the notes were, as the assignee had the same rights to subject the securities to the payment of the debts, as the assignor had. If several obligations were secured by the guaranty, an assignment of some of them operated to transfer the rights in it *pro tanto* to the assignees. McClanahan v. Chambers, 1 Mon. 45.

The judgment is therefore affirmed.